IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS B. HORTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2475-E-BN |
| | § | |
| 360 DIGITAL MARKETING, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Through the operative *pro se* complaint, raising seven causes of action, Plaintiff Lucas B. Horton alleges that Defendant 360 Digital Marketing, LLC ("360") violated provisions of the Telephone Consumer Protection Act ("TCPA"), related federal regulations, and provisions of the Texas Business and Commerce Code ("TBCC"). *See* Dkt. No. 28.

Horton obtained a summons for this complaint. *See* Dkt. No. 29. And, seven weeks later, he moved the Clerk to enter default against 360, attaching to his motion a process server's declaration setting out that an individual "designated by law to accept service of process on behalf of" 360 was personally served on October 6, 2023. *See* Dkt. No. 31. The Clerk entered default. *See* Dkt No. 32. Horton then moved for default judgment. *See* Dkt. Nos. 33-35 & 39.

Horton's lawsuit is now referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ada Brown. *See also* Dkt. No. 36.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should grant the motion in part and deny it in part.

## Legal Standards

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults").

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu*

*Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Default judgment can also appropriate where a defendant fails to follow court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Second, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered.*" Nishimatsu*, 515 F.2d at 1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV.

P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault

- 4 -

judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted). And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

**I. The Court has jurisdiction over the subject matter and the parties.**

Deciding the motion for default judgment "begins, as it must, by examining the Court's jurisdiction." *Wattiker v. Elsenbary Enters., Inc.*, No. 3:22-cv-940-B-BN, 2023 WL 5167023, at *3 (N.D. Tex. May 19, 2023) (cleaned up; quoting *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022)), *rec. accepted*, 2023 WL 5167019 (N.D. Tex. June 13, 2023); *accord Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first." (citation omitted)).

Horton alleges more than insubstantial violations of the TCPA, a federal statute, so there is federal question jurisdiction under 28 U.S.C. § 1331, an "independent basis of subject matter jurisdiction," which allows for supplemental jurisdiction under 28 U.S.C. § 1367 for the alleged state law violations. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

And where Horton alleges that 360 texted his cell phone number in Texas to

sell its ghostwriting services, the Court has jurisdiction over 360 for the purpose of this lawsuit. *See Pavelka v. Pelican Inv. Holdings Grp., LLC*, No. 3:22-cv-74-B, 2022 WL 3159275, at *5 (N.D. Tex. Aug. 8, 2022) ("In TCPA cases, some district courts have established specific jurisdiction over an out-of-state defendant when the defendant purposefully avails itself of the benefits of the forum state by making phone calls or sending texts to phone numbers with forum area codes." (collecting cases)); *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 568 (S.D. Tex. 2021) ("Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of 'the privilege of causing a consequence' in whatever state that call reaches." (quoting *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999))).

Such specific jurisdiction simply "demands a connection between the suit and the forum." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 582 U.S. 255, 262 (2017)). Accordingly, it "focuses on the relationship among the defendant, the forum, and the litigation." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

## II. The procedural requirements for default judgment have been met.

360 was served a copy of the summons and the complaint on October 6, 2023, *see* Dkt. No. 31-1, to which there was no response. The Clerk entered default on December 1, 2023. *See* Dkt. No. 32. And 360 is not a natural person, so it cannot be a minor, an incompetent person, or in military service.

As to service on October 6, the process server affirms that the summons and the complaint were served on the same individual who signed on behalf of 360 as to a 2021 state court settlement agreement between 360 and Horton. *Compare* Dkt. No. 31-1, *with* Dkt. No. 34. This at least raises a reasonable inference that the individual served on behalf of 360 is an officer or managing or general agent of the company or is authorized by appointment or by law to accept service. *See* FED. R. CIV. 4(h)(1); FED. R. CIV. P. 4(e)(1); TEX. R. CIV. P. 106(a).

### III. Horton's allegations support default judgment as to Claims 2 and 4.

Horton alleges that, from May 26, 2021 to October 19, 2022, he received 27 texts to his cell phone (on the National Do Not Call ("DNC") since 2011) that all "featured generic links to [360's] websites and were soliciting ghostwriting services." Dkt. No. 28 at 3-4. While Horton seeks damages based on 26 texts, *see id.* at 8, his complaint identifies 27, *see id.* at 3-4. So the Court should resolve this discrepancy in Horton's favor, where the facts alleged reflect 27, while 26 appears to be a mistaken conclusion.

Horton further alleges that he never provided his cell number to 360 or its agent, nor did he have a prior relationship with them or consent to their texting him. *See id.* at 3. In fact, as set out above, he sued 360 in small claims court for its texting him, and the parties settled in June 2021, "yet [360] continued to text [Horton]." *Id.*

As to the specific causes of action, Horton first alleges that 360's texting him violated 47 U.S.C. § 227(b)(1)(A). *See* Dkt. No. 28 at 5-6.

> Section 227(b) of the TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

> telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A violation of § 227(b)(1)(A)(iii) occurs if: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent." *Cunningham v. Nationwide Sec. Sols., Inc.*, No. 3:17-cv-337-M, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

*Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-cv-1598-D, 2021 WL 5040228, at *3 (N.D. Tex. Oct. 29, 2021) (cleaned up).

Considering the required use of an automatic telephone dialing system ("ATDS"),

> [t]he TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). [And] the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 401 (2021) (internal quotations omitted). The Court held that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id.* at 399. Thus to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id.* at 404.

*Id.* (citations modified).

In *Duguid*,

> [t]he Court's discussion of the TCPA's policy aims also supports the view that an autodialer must be able to generate random or sequential telephone numbers. It noted that autodialers had "revolutionized telemarketing by allowing companies to dial random or sequential

> blocks of telephone numbers automatically." Besides annoying consumers, the autodialer "threatened public safety by 'seizing the telephone lines of public emergency services, dangerously preventing those lines from being utilized to receive calls from those needing emergency services.'" And it could "simultaneously tie up all the lines of any business with sequentially numbered phone lines."

*Borden v. eFinancial, LLC*, 53 F.4th 1230, 1234 (9th Cir. 2022) (emphasis omitted; quoting *Duguid*, 592 U.S. at 399-400); *see also Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 395 (8th Cir. 2022) (Section 227 "'target[s] a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity.' [And t]he Court reasoned, "Expanding the definition of an [A]utodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel.'" (quoting *Duguid*, 592 U.S. at 405)).

Horton does allege the use of an ATDS. *See* Dkt. No. 28 at 1 (It "is the Defendant's practice of texting consumers who are the National Do Not Call List using an ATDS."); *id.* at 4 ("Rather than adhere to the requisite rules regarding obtaining consent prior to engaging in telemarketing and abstaining from the use of an ATDS, Defendant repeatedly place texts to consumers who have never provided consent (either orally or in writing) to receive such texts."); *id.* at 5 ("Using an ATDS, the Defendant, or its proxy, texted the Plaintiff with the Defendant's consent, knowledge, and for its benefit without having any consent to do so from the Plaintiff.").

But all of Horton's allegations as to the use of an ATDS are conclusory. That is, he has not "plausibly [pled] the use of an ATDS by alleging facts that indirectly

suggest that such a device was used." *Horton v. Tex. Fed'n for Children PAC, Inc.*, No. 3:22-cv-2736-D, 2023 WL 3136422, at *4-*5 (N.D. Tex. Apr. 27, 2023) (in which the court found that Horton had plausibly pled the texts were sent through use of an ATDS where Horton alleged "that the text messages 'were made using an automatic telephone dialing system as defined at 47 U.S.C. § 227(a)(1) and as explained in subsequent FCC regulations and orders'"; "assert[ed] that the system TFC used has the 'capacity to store numbers, or to randomly produce telephone numbers to send text messages using a random or sequential number generator'"; and "maintain[ed] that these allegations are supported by the following facts: that all three messages were generic and not addressed to Horton specifically; the frequency of the messages; the absence of any preexisting relationship between the parties, and the fact that Horton is not a registered Republican; the coincident conclusion that there is no way – aside from the use of an ATDS – that TFC would have had access to Horton's telephone number; and that the sender's phone numbers (although long codes rather than the short codes typically used by an ATDS) did not receive incoming calls and were not monitored for incoming text messages").

That level of detail concerning this required element is missing here.

And, since *Duguid*, courts have emphasized the need to plausibly allege the use of an ATDS, focusing on allegations that could show that the defendant's device used a random or sequential number generator to produce or store phone numbers (as opposed to another method).

As an example, the United States Court of Appeals for the Third Circuit

recently summarized its prior decision, *Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3d Cir. 2022):

> In *Panzarella*, we held that a loan servicer did not violate the TCPA because there was no evidence that its device used a random or sequential number generator to produce or store phone numbers. We posed a hypothetical of a device that could make phone calls in two modes: automatic-mode, where the device dials random or sequentially generated phone numbers, or list-mode, where the device dials telephone numbers from a customer list. We explained that unlike automatic-mode calls, list-mode calls would not "threaten the harm the TCPA targets," namely, "telemarketing 'that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity.'" "Congress would have little reason," we noted, "to expose [the defendant] to liability for its list-mode calls as these calls do not present these risks."

*Perrong v. Montgomery Cnty. Democratic Committee*, No. 23-2415, 2024 WL 1651274, at *1 (3d Cir. Apr. 17, 2024) (quoting *Panzarella*, 37 F.4th 867 at 881-82).

The lack of facts alleged in Horton's complaint as to how the texts were sent makes it is just as plausible that the texts that he allegedly received were generated from a list, and thus those texts would not trigger the concerns that prompted Congress to pass the TCPA. *See Borden*, 53 F.4th at 1236 (concluding that, "[w]hile we all wish for fewer calls and messages from marketers, [courts] are limited to the bounds of the TCPA").

In sum, there is not a "sufficient basis in the pleadings" to enter judgment for the alleged violations of Section 227(b)(1)(A). *Nishimatsu*, 515 F.2d at 1206.

Horton's second cause of action is premised on Section 227(c), which "establishes the national DNC list and creates a private right of action against particular entities." *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *2 (E.D. Tex. June 26, 2023), *rec. adopted*, 2023 WL 4488848 (E.D. Tex.

July 12, 2023).

"To successfully plead a violation under section 227(c), a plaintiff must allege (1) the receipt of 'more than one' telephone call or message 'within any 12-month period,' (2) made 'by or on behalf of the same entity,' (3) to a phone number registered on the DNC list." *Id.* (quoting *Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-cv-1000-G-BK, 2022 WL 18673259, at *3 (N.D. Tex. Nov. 18, 2022), *rec. rejected on other grounds*, 2023 WL 372066 (N.D. Tex. Jan. 23, 2023)).

And this provision of the TCPA plausibly applies to cellular phones. *See, e.g.*, *Myrick*, 2023 WL 4488848, at *1 ("[I]n *Cranor[ v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021), where the Court of Appeals considered Section 227(b) of the TCPA,] the Fifth Circuit reasoned generally that Congress sought to remediate 'nuisance and invasion of privacy' in a broader set of circumstances, not just in the home and that 'the TCPA cannot be read to regulate unsolicited telemarketing only when it affects the home.' Thus, the Court agrees that the reasoning in *Cranor* supports the conclusion that § 227(c) of the TCPA is not limited to devices used only in the home…. Ultimately, the Magistrate Judge agreed with the majority of district courts around the country that have similarly considered the FCC's guidance and concluded that § 227(c)'s 'residential telephone subscriber' provision can encompass wireless subscribers. Having considered the issue presented, the Court agrees with this conclusion, particularly in light of the courts within the Fifth Circuit that have reached this same conclusion." (citations omitted)).

Considering this authority, Horton has alleged a "sufficient basis in the

pleadings" to enter judgment for the alleged violations of Section 227(c). *Nishimatsu*, 515 F.2d at 1206.

And, to the extent that he has plausible alleged violations of the TCPA, the pleadings also provide a sufficient basis to enter judgment as to the alleged violations of Section 305.053(a) of the TBCC [Claim 2]. *See Pinn v. CycleBar Franchising, LLC*, No. 3:23-cv-1540-M, 2023 WL 8374749, at *2 (N.D. Tex. Dec. 4, 2023) ("'The Texas TCPA [referring to TBCC § 305.053] proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA.' It is axiomatic that if no violation of the TCPA exists, then there is no violation of TBCC § 305.053; in other words, the two are coextensive." (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014); collecting cases)).

But such a basis does not exist for the remainder of Horton's claims – alleging liability for 360 under 47 C.F.R. § 64.1200(d) and Chapter 302 of the TBCC.

While "§ 64.1200(d) was issued to further the privacy right in § 227(c)," so "the private right of action contained in § 227(c) reaches violations of § 64.1200(d)," *Powers v. One Techs., LLC*, No. 3:21-cv-2091, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022) (footnote omitted), "[t]he regulations in § 61.1200(d) are not directly concerned with the *national* do-not-call list, but the requirement that companies maintain *internal* do-not-call lists," *John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631, at *5 (M.D. Fla. Feb. 4, 2020) (emphasis in original)). And Horton's allegations as to violations of Section 64.1200(d) [Claims 3,

- 13 -

5, and 6] are too conclusory to provide a sufficient basis to grant default judgment. *See Horton v. Advantage One Brokers Corp.*, No. 3:22-cv-2474-B-BT, 2023 WL 4188291, at *4 (N.D. Tex. June 5, 2023), *rec. accepted*, 2023 WL 4188046 (N.D. Tex. June 26, 2023).

Similarly, Horton "'tells' the Court the elements of section 302.101 of the Texas Business and Commerce Code [Claim 7] but does not 'explain' how this would allow the Court to conclude that [360] operates without a telemarketing registration certificate." *Horton*, 2023 WL 4188291, at *4; *see also Powers*, 2022 WL 2992881, at *4 ("reject[ing] the plaintiffs' argument that 'call' under Chapter 302 includes "text messages" (footnote omitted)).

## IV.  Consideration of other factors supports default judgment on the causes of action for which there is a basis to enter judgment [Claims 2 and 4].

Default judgment is a harsh remedy, but 360's failure to answer Horton's complaint supports default judgment on the claims as set out above.

There has not been substantial prejudice against 360.

And there are clearly established grounds for default: 360 failed to answer the complaint. There is no indication that 360's default was caused by good faith mistake or excusable neglect. And so the court would not feel obligated to set aside a default (should a motion to so be filed). *See Lindsey*, 161 F.3d at 893.

## V.  The Court should award Horton damages.

Horton requests treble damages as to the violations of Section 227(c) and its Texas law analogue (Claims 2 and 4) because he continued to receive texts from 360 after settling a small claims case against the company based on 360's sending him

- 14 -

texts. *See* Dkt. 28 at 3, 6, & 8; *see also* 47 U.S.C. § 227(c)(5)(C).

But Horton alleges no facts to show that his continuing to receive texts from 360 after this settlement amounts to more than 360's negligence. *See Noviello v. Adam Wines Consulting, LLC*, No. 3:22-cv-52-BN, 2023 WL 2776696, at *8 (N.D. Tex. Apr. 4, 2023) (observing that some "courts have interpreted willful or knowing under Section 227(c)(5)(C) as not requiring bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute," while others "have endorsed the position that, under Section 227(c)(5)(C), mere negligence would not be enough to support trebling an award and, instead, a defendant would only be liable for treble damages if its actions demonstrated indifference to ongoing violations and a conscious disregard for compliance with the law" (cleaned up; quoting *Cunningham v. Patterson*, No. A-19-CV-409-LY, 2020 WL 7554569, at *2 (W.D. Tex. Apr. 3, 2020), *rec. adopted*, 2020 WL 7585887 (W.D. Tex. June 9, 2020); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 662 (4th Cir. 2019))).

In *Noviello*, the court concluded that no evidence at trial supported a finding that the defendant "willfully or knowingly violated the regulations prescribed under 47 U.S.C. § 227(c)." *Id.* There is similarly a lack of evidence on the record here, to make such a finding at default judgment. *Cf. Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("[A] broad application of 'willful' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful and knowing violations that congress intended to punish more severely." (cleaned up)).

Horton also fails a show a basis to award him either an injunction or double recovery as to the 27 text messages alleged in the complaint.

First, the undersigned finds that Horton should be awarded statutory damages of $500 for each text message (for a total of $13,500) even though each text may support liability under the TCPA and the TBCC. *See Shields v. Gawk Inc.*, No. 3:18-CV-00150, 2019 WL 1787781, at *5 (S.D. Tex. Apr. 24, 2019) ("Because Shields has already been awarded $500 for Weaver's violation of Section 227(b), he is not entitled to any additional monetary damages for the corresponding violation of Section 305.053. *See Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-376-SS, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) ('There is no indication in either the TCPA or in Texas's analogue that either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations.'); *David L. Smith & Assocs., LLP v. Stealth Detection, Inc.*, 327 S.W.3d 873, 878 (Tex. App. – Dallas 2010, no pet.) (permitting plaintiff to recover $500 per call for violations of both the TCPA and Section 305.053, awarding a total of $16,500 for 33 calls)."), *rec. adopted*, 2019 WL 2103423 (S.D. Tex. May 14, 2019).

And, while Horton requests an injunction, the Court need not award him one based on the allegations of the complaint. *See, e.g., id.* at *6 ("When a statute authorizes injunctive relief, the presumption is that the legislative branch still intended the courts to exercise their traditional equitable discretion in deciding whether to grant an injunction. Federal judges are 'not mechanically obligated to grant an injunction for every violation of law,' but rather must assess whether the

relief requested comports with 'what is necessary, what is fair, and what is workable.'" (citations omitted)).

So, as set out above, because "[t]he damages set forth can be computed with certainty by reference to the pleadings," "the Court need not conduct a hearing to enter a default judgment and determine the amount of damages under Rule 55(b)(2)." *Crown Distrib. LLC v. Peacefull Choice Distrib. LLC*, No. 3:20-cv-3404-K, 2023 WL 1997927, at *9 (N.D. Tex. Jan. 27, 2023), *rec. accepted*, 2023 WL 1997785 (N.D. Tex. Feb. 14, 2023).

## Recommendation

The Court should grant the motion for default judgment [Dkt. No. 28] in part and deny it in part by entering default judgment as to Claims 2 and 4 against Defendant 360 Digital Marketing, LLC and awarding Plaintiff Lucas B. Horton $13,500 in damages.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 13, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE